UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| ANTHONY Q. SWIGER, ) ) Plaintiff, ) ) v. ) ) CONTINENTAL CASUALTY COMPANY, ) ) Defendant. ) ) ) | Civil No. 05-255-ART **MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Anthony Q. Swiger brings this action pursuant to the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, against Continental Casualty Company ("Continental" or "Defendant"). He seeks to recover long-term disability benefits under the Group Long Term Disability Policy (the "Policy"), which Continental issued to Mr. Swiger's employer, Unified Financial Services, Inc. Continental denied long-term disability benefits to Mr. Swiger on the basis that his disability is attributable to a preexisting condition for which the Policy excludes benefits. Presently pending before the Court is Plaintiff's Brief [R. 15] and Defendant's Brief on the Administrative Record [R. 24].

The Court held oral argument on April 22, 2008, at which time the parties narrowed the issue before the Court to the following: was it arbitrary and capricious for Defendant to find that Mr. Swiger's herniated discs constituted a preexisting condition for which the Policy excludes benefits. Because the Court finds it is not possible to offer a reasoned explanation based on the evidence in the administrative record for finding that Mr. Swiger's herniated discs constituted a

preexisting condition, Defendant's denial of benefits on this basis is arbitrary and capricious. The Court remands this case to the administrator to make further findings regarding Mr. Swiger's entitlement to the long-term disability benefits he seeks.

**I.   BACKGROUND**

*A.  Relevant Policy Provisions*

The Policy funds an employee welfare benefit plan governed by ERISA and provides various benefits, including the long-term disability benefits sought by Mr. Swiger, to eligible plan participants. It also contains certain exclusions and limitations, such as the preexisting condition exclusion at issue. The Policy states that it "does not cover any loss caused by, contributed to, or resulting from: . . . a *Pre-existing Condition* . . . ." [Adm. R. 15] (emphasis in original). In turn, the Policy defines a preexisting condition as a "condition for which medical treatment or advice was rendered, prescribed or recommended within 3 months prior to *Your* effective date of insurance. A condition shall no longer be considered pre-existing if it causes *Disability* which begins after *You* have been insured under the policy for a period of 12 months." *Id.* at 23 (emphasis in original).

Because Mr. Swiger became insured under the Policy on October 1, 2000, but ceased working on July 18, 2001, [R. 15, pp. 2–3], Mr. Swiger had not been insured under the Policy for a period of twelve months at the time of his termination. Therefore, the exclusion for preexisting conditions comes into play. Based on Mr. Swiger's October 1, 2000, effective date, the relevant three-month window for preexisting conditions is July 1, 2000, to October 1, 2000 (the "Preexisting Condition Period"). *Id.* at 3. In other words, any condition for which medical treatment or advice was rendered, prescribed, or recommended to Mr. Swiger during the

2

Preexisting Condition Period would be considered a preexisting condition for which Mr. Swiger would be unable to receive long-term disability benefits.

### B.  *Plaintiff's Polio and Back Pain*

Mr. Swiger contracted polio at the age of six months, and it severely affected his right leg, which has remained weak and atrophic since.  [Adm. R. 110].  By the time Mr. Swiger was a teenager, he had undergone thirteen orthopedic surgeries on his legs.  *Id.*  In addition, Mr. Swiger has worn a full leg brace on his right leg his entire life.  *Id.*  Because of these problems, Mr. Swiger has experienced pain from walking throughout his life.  *Id.*  According to Mr. Swiger, however, the pain in his back and legs began increasing in June of 2001.  *Id.* at 219.  Because of this pain, Mr. Swiger took a leave of absence from his job as an insurance adjuster.  *Id.* at 280.  Mr. Swiger's employer terminated him on July 18, 2001, *id.*, and Mr. Swiger thereafter sought long-term disability benefits under the Policy.

### C.  *Medical Records from the Preexisting Condition Period*

During the Preexisting Condition Period, Mr. Swiger visited Dr. Ray deGuzman three times, on July 14, 2000, August 18, 2000, and September 19, 2000.  *Id.* at 172–73.  He also visited Dr. deGuzman twice before the Preexisting Condition Period on May 16, 2000, and June 13, 2000.  *Id.* at 171–72.  According to Dr. deGuzman's records from the May 16 visit, Mr. Swiger complained of stiffness and pain in the lumbosacral area, and an examination revealed moderate lumbosacral tenderness and spasm.  *Id.* at 171.  Dr. deGuzman diagnosed Mr. Swiger as having degenerative lumbar disc disease and arthritis, and he prescribed heat, OxyContin, Soma, and Celebrex.  *Id.*  During the June 13, July 14, and August 18 visits, Mr. Swiger reported the same pain as during his May 16 visit, and Dr. deGuzman's examination revealed the same

problems. *Id.* at 172–73.  Dr. deGuzman prescribed the same medicine for Mr. Swiger as well during these visits, *id.*, and pharmacy records show that Mr. Swiger filled these prescriptions. *Id.* at 175.  At the September 19 visit, Mr. Swiger complained of "much back pain and stiffness," and Dr. deGuzman's examination revealed tenderness and spasm. *Id.* at 173.  During this visit, Dr. deGuzman also reiterated his earlier diagnosis of degenerative lumbar disc disease and arthritis. *Id.*

       *D.  Medical Records After the Preexisting Condition Period*

Following the Preexisting Condition Period, Mr. Swiger visited numerous doctors.  He continued seeing Dr. deGuzman, with visits occurring on October 19, 2000, and December 6, 2000. *Id.* at 174.  Mr. Swiger reported the same problems, and the diagnosis remained the same. *Id.*  The pain, however, was not debilitating, and Mr. Swiger continued to work.

Mr. Swiger then visited Dr. Martin various times between January 2001 and November 2001, though there is no mention of back problems in Dr. Martin's notes from these visits. *Id.* at 137.  Also during this time, on July 19, 2001, Mr. Swiger visited Dr. Shockey, who noted that he reported increasing pain in his hips and knees. *Id.* at 225.  Dr. Shockey also stated that Mr. Swiger had a past diagnosis of post-polio syndrome and that an examination showed marked atrophy of the right lower extremity. *Id.*

Dr. Martin referred Mr. Swiger to Dr. Ross, who examined him on August 23, 2001. *Id.* at 110.  Mr. Swiger reported progressive weakness in his arms and legs over the last year, pain from walking, and constant low back pain. *Id.*  Dr. Ross stated that the weakness in his right leg most likely represented post-polio muscular atrophy, though he noted other possibilities. *Id.* at 111.  To evaluate the problems further, Dr. Ross recommended that Mr. Swiger return for various

4

tests, including a CT scan. *Id.* On August 30, 2001, Mr. Swiger returned for the additional tests, the results of which led Dr. Ross to change his diagnosis. *Id.* at 109. Dr Ross indicated that the CT scan showed herniated discs at L3/L4 and L5/S1 with compression of the corresponding nerve roots. *Id.* Dr. Ross further stated, "[a]lthough I initially thought his new weakness was due to progressive post-polio muscular atrophy, the CT abnormalities suggest lumbar radiculopathies could explain his deterioration." *Id.* On September 11, 2001, Dr. Ross sent a letter to Defendant explaining his new diagnosis and stating, "[a]lthough Mr. Swiger has a history of poliomyelitis and may have some component of progressive post-polio muscular atrophy, the abnormal CT scan findings suggest that his new problems of increased pain in the back and right leg and increased right leg weakness are likely related to lumbar nerve root compression secondary to herniated discs." *Id.* at 108.

Dr. Ross referred Mr. Swiger to Dr. Tibbs, who examined him on October 17, 2001. *Id.* at 249. Dr. Tibbs did not make any diagnosis as to Mr. Swiger's condition, but he did note that Mr. Swiger complained of low back pain that reached into both legs for the past four months and referenced the previous diagnosis of herniation. *Id.* Mr. Swiger then visited Dr. Witt and Dr. Harris on October 25, 2001. *Id.* at 219. Mr. Swiger reported pain in both of his legs and that the pain in his low lumbar spine had increased beginning as of June 2001. *Id.*

Mr. Swiger returned to Dr. Witt on November 30, 2001, who indicated that Mr. Swiger reported pain in his back and right leg since June of 2001. *Id.* at 203. Dr. Witt assessed Mr. Swiger as having "chronic postpolio syndrome with an acute exacerbation of pain secondary to a herniated nucleus pulposus." *Id.* On December 18, 2001, Mr. Swiger visited Dr. Campbell to establish a primary care physician. *Id.* at 96. Mr. Swiger reported that he had not suffered from

5

any pain recently. *Id.* Dr. Campbell reviewed Mr. Swiger's medical history and noted the atrophy of Mr. Swiger's right leg due to his bout with polio as a child. *Id.* at 96–98.

Continental retained Dr. Truchelot to review Mr. Swiger's medical records. On March 16, 2002, Dr. Truchelot submitted his report to Continental in which he summarized Mr. Swiger's medical records. *Id.* at 83–86. Continental specifically asked Dr. Truchelot whether the post-polio syndrome and herniated discs were considered preexisting conditions, as defined in the Policy. *Id.* at 86. Dr. Truchelot stated, "[t]he only records available from [the Preexisting Condition Period] are from Dr. Deguzman. While I don't see any records in those notes of treatment which was addressing the sequela of polio, Dr. Deguzman was clearly treating the condition of degenerative lumbar disk disease as he names this as his diagnosis." *Id.*

Subsequent to Dr. Truchelot's report, Dr. deGuzman sent a letter to Continental on April 18, 2002, regarding his treatment of Mr. Swiger. *Id.* at 73. He stated that he had been treating Mr. Swiger for degenerative lumbar arthritis, hypertension, and postpolymyositis with deformity of the right leg since March 16, 1999. *Id.* He then contrasted these diagnoses with the herniated disc at L3/L4 and L5/S1 with compression of the corresponding nerve roots that Dr. Ross first noted. *Id.*

E.  *Procedural History*

Following his termination on July 18, 2001, Mr. Swiger applied for long-term disability benefits on July 23, 2001. *Id.* at 107. On the application form, Mr. Swiger listed post-polio syndrome as the nature of his disability. *Id.* In the section of the form completed by Mr. Swiger's attending physician, Dr. Martin listed Mr. Swiger's diagnosis as fatigue, muscle weakness, and post-polio syndrome. *Id.* On December 6, 2001, Continental sent Mr. Swiger a

letter in which it indicated it was investigating his claim for long-term disability benefits and the applicability of the preexisting condition exclusion. *Id.* at 184. On December 26, 2001, Mr. Swiger sent a letter to Continental stating that he had fallen off of a truck while working in West Virginia and that this fall had injured his back and was the reason for his inability to return to work. *Id.* at 181.

On March 22, 2002, Continental denied Mr. Swiger's application for long-term disability benefits on the basis that his disability was attributable to a preexisting condition for which disability benefits are excluded under the terms of the Policy.[1] *Id.* at 30–31. Though not entirely clear from the letter, it appears Continental claimed that Mr. Swiger's degenerative lumbar disc disease constituted the preexisting condition. *Id.* at 31. On June 18, 2002, Mr. Swiger appealed this decision, stating that the fall had led to new problems with his back and legs, which were preventing him from returning to work. *Id.* at 71–72. Along with his appeal, Mr. Swiger attached the April 18, 2002, letter from Dr. deGuzman indicating there was a difference between degenerative lumbar arthritis (for which he had been treating Mr. Swiger for some time) and a herniated disc (which was brought about by the fall in June 2001). *Id.* at 73. On August 7, 2002, Continental upheld the determination that Mr. Swiger's disability was due to a preexisting condition and denied Mr. Swiger's appeal. *Id.* at 32–34. In this letter, Continental indicated that Mr. Swiger's low back pain and post-polio syndrome constituted the preexisting conditions precluding him from receiving disability benefits. *Id.* at 33–34. Subsequently, on August 16, 2005, Mr. Swiger filed suit in this Court challenging Continental's denial of his claim for

---

[1] In this letter, Continental stated that Mr. Swiger had filed a disability claim for the diagnoses of post-polio syndrome and a herniated disc. *Id.* at 30. While Mr. Swiger did list post-polio, he did not list a herniated disc. Continental made this mistake in other letters to Mr. Swiger as well. *Id.* at 88, 184.

disability benefits.  [R. 1].

**II.    STANDARD OF REVIEW**

*A.  Standard of Review in ERISA Actions*

The parties do not dispute that the Policy funds an employee benefit plan covered by ERISA.  [R. 15, p. 1; R. 24, p. 2].  In an ERISA-governed benefits action, the Court initially must determine the applicable standard of review–either arbitrary and capricious or *de novo*–based upon the language in the benefit plan.  Once it identifies the applicable standard, the Court determines whether Continental's administrative decision should be affirmed under the applicable standard based solely upon the administrative record.  *Wilkins v. Baptist Mem'l Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

**1.  Arbitrary and Capricious Standard**

A court should conduct a *de novo* review of Continental's administrative decision "unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where a plan "expressly grants the administrator discretionary authority to determine eligibility for benefits," the Court shall "review the administrator's decision to deny benefits using the 'highly deferential arbitrary and capricious standard of review.'"  *Killian v. Healthsource Provident Adm'rs Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)).  Here, both parties agree that the Court should review Continental's denial of benefits under the arbitrary and capricious standard of review because the Policy grants the administrator the requisite discretionary authority.  [R. 15, p. 1; R. 24, pp. 6–7].

"[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). When applying this standard, this Court "must decide whether the plan administrator's decision was 'rational in light of the plan's provisions.'" *Id.* (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)). But simply because the arbitrary and capricious standard applies does not mean that this Court's review is inconsequential. *Moon v. UNUM Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005) ("[M]erely because our review must be deferential does not mean our review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions.").

Continental serves as both the insurer and claims administrator for its policy with Unified Trust Company, N.A., which appears to be the parent company of Mr. Swiger's employer, Unified Financial Services, Inc. As such, there is an inherent conflict between its fiduciary role as claims administrator and its role as a profit-seeking insurance company. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) ("Because an insurance company pays out to beneficiaries from its own assets rather than from the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business, and the conflict of interest is substantial."). However, the "conflict of interest inherent in self-funded plans does not alter the standard of review, but 'should be taken into account as a factor in determining whether the . . .

9

decision was arbitrary and capricious.'" *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998) (alteration in original) (quoting *Davis*, 887 F.2d at 694); *see also Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 948 (6th Cir. 2005) ("Though plaintiff argues for application of a 'heightened' review because Hartford both funds and administers this plan, the courts factor an insurer's dual role into its review under the arbitrary and capricious standard, rather than alter that standard.").

The issue is what weight the Court should give to this factor. Mr. Swiger offers no evidence that the conflict of interest affected Continental's decision to deny him benefits. Rather, Mr. Swiger, both in his brief and at the hearing, simply relies on the conflict of interest inherent in Continental's dual role of insurer and claims administrator. In situations such as this where a plaintiff offers no evidence of the effect of the conflict of interest on the decision-making process, courts in the Sixth Circuit give little to no weight to this factor. *See, e.g.*, *Pflaum v. UNUM Provident Corp.*, No. 04-2411, 2006 WL 678960, at *3 (6th Cir. Mar. 15, 2006) (unpublished) ("Because Pflaum points to nothing beyond the mere existence of a conflict of interest to show that UNUM's decision was motivated by self-interest, we give no further consideration in the arbitrary and capricious analysis to the possibility that the conflict affected UNUM's decision-making."); *Cochran v. Trans-Gen. Life Ins. Co.*, Nos. 99-2102, 99-2447, 2001 WL 392050, at *3 (6th Cir. Apr. 13, 2001) (unpublished) ("[M]ere allegations of the existence of a structural conflict of interest are not enough; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits."); *Gambrel v. Hartford Life & Accident Ins. Co.*, No. 05-415, 2006 WL 751237, at *4 (E.D. Ky. Mar. 22, 2006) (unpublished) ("While the potential for a conflict of interest is a factor to be considered, but it

10

does not deserve much weight given the lack of any evidence demonstrating impropriety by Hartford or the doctors."). Accordingly, the Court will accord little to no weight to Continental's structural conflict of interest.[2]

### 2. Scope of Review

The Court's review of Continental's administrative decision must be based only upon the material in the administrative record, and therefore the Court "may not consider new evidence or look beyond the record that was before the plan administrator." *See Wilkins*, 150 F.3d at 616. The Court may consider the parties' arguments concerning the proper analysis of the evidentiary materials in the administrative record, but it may not admit or consider any evidence not presented to the administrator. *Id.*

### III. ANALYSIS

The Policy does not provide benefits for any loss caused by, contributed to, or resulting from a preexisting condition, which includes any condition for which medical treatment or advice was rendered, prescribed, or recommended within three months prior to Mr. Swiger's effective date of insurance. [Adm. R. 15, 23]. Therefore, the controlling inquiry is whether the health condition preventing Mr. Swiger from working is caused by, contributed to, or results from a preexisting condition.

---

[2] Mr. Swiger's counsel stated at the hearing that he could not establish bias because he could not conduct discovery regarding Continental's conflict of interest and whether it had any effect on its decision-making process. The Sixth Circuit, however, has stated that while the general rule is that discovery is not allowed in an ERISA action premised on a review of the administrative record, "an exception to that rule exists where a plaintiff seeks to pursue a decision-maker's bias." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 293 n.2 (6th Cir. 2005).

*A. Post-polio Syndrome*

In its brief, Continental argued that the preexisting condition of post-polio syndrome (along with Mr. Swiger's back problems) were preventing Mr. Swiger from returning to work. [R. 24, pp. 8–9]. At the April 22, 2008, hearing, Continental conceded that post-polio syndrome is not a preexisting condition. Mr. Swiger likewise conceded at the hearing that post-polio syndrome is not preventing Mr. Swiger from working; rather, it is the herniated discs. Thus, the Court need not address Mr. Swiger's post-polio because both parties agree it is not the condition preventing him from returning to work.

*B. Herniated Discs as a Preexisting Condition*

Also at the hearing, Continental narrowed its argument regarding Mr. Swiger's back problems. Continental stated that its position was that Mr. Swiger had suffered from (and was being treated for) herniated discs during his visits to Dr. deGuzman in the Preexisting Condition Period. In other words, Continental argues that Dr. deGuzman mis-diagnosed Mr. Swiger as having degenerative lumbar disc disease when in actuality he suffered from herniated discs. In contrast, Mr. Swiger treats his herniated discs and his degenerative lumbar disc disease as two separate health conditions. [R. 15, pp. 3–4]. While Mr. Swiger admits that degenerative lumbar disc disease is a preexisting condition, he argues that the preexisting condition exclusion does not apply because the herniated discs are preventing his return to work and that they constitute a different health condition. *Id.* Accordingly, the issue before the Court is whether there is any evidence in the record supporting the contention that Mr. Swiger's herniated discs constitute a preexisting condition, *i.e.*, that medical treatment or advice was rendered, prescribed, or recommended to Mr. Swiger from July 1, 2000, to October 1, 2000, for his herniated discs.

Based on the administrative record, Defendant's denial of benefits on the basis that Mr. Swiger's herniated discs constitute a preexisting condition is arbitrary and capricious. While Continental put forth a persuasive argument at the hearing regarding the herniated discs as a preexisting condition, that argument lacks evidentiary support. There is insufficient evidence in the administrative record supporting Continental's argument that medical treatment or advice was rendered, prescribed, or recommended for Mr. Swiger's herniated discs during the Preexisting Condition Period.

Continental retained Dr. Truchelot to review Mr. Swiger's medical records, and on March 16, 2002, Dr. Truchelot submitted his report to Continental in which he summarized those medical records. [Adm. R. 83–86]. Continental specifically asked Dr. Truchelot whether the post-polio syndrome and herniated discs were considered preexisting conditions, as defined in the Policy. *Id.* at 86 ("You have asked whether the post polio syndrome and herniated disc are considered preexisting under the definition within the time period from 7/1/00 through 9/30/00."). In response Dr. Truchelot stated, "[t]he only records available from [the Preexisting Condition Period] are from Dr. Deguzman. While I don't see any records in those notes of treatment which was addressing the sequela of polio, Dr. Deguzman was clearly treating the condition of degenerative lumbar disk disease as he names this as his diagnosis." *Id.* As is apparent, Dr. Truchelot does not address the issue before this Court: whether herniated discs constitute a preexisting condition. Dr. Truchelot does not say that Mr. Swiger had herniated discs in spite of Dr. deGuzman's diagnosis of degenerative lumbar disc disease, as Continental argues. Rather, Dr. Truchelot simply states what Mr. Swiger already admits: that degenerative lumbar disc disease is a preexisting condition.

13

The fact that Dr. Truchelot failed to answer directly Continental's question of whether herniated discs constitute a preexisting condition is telling as well.  Continental specifically asked him whether post-polio syndrome and herniated discs were preexisting conditions.  Dr. Truchelot responded directly regarding post-polio, indicating that it was not a preexisting condition.  However, with respect to herniated discs, he gave what was essentially a non-responsive answer.  Rather than indicating that herniated discs were or were not a preexisting condition, Dr. Truchelot stated that degenerative lumbar disc disease was a preexisting condition.  That was not the question asked however.  While it could perhaps be argued that Dr. Truchelot implied that degenerative lumbar disc disease was one in the same as the herniated discs, such an argument is pure speculation and does not sufficiently support Continental's conclusion that Mr. Swiger's herniated discs were a preexisting condition.  *See Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (stating that an administrator's decision must be supported by substantial evidence if it is to be upheld under the arbitrary and capricious standard); *cf. McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 170–71 (6th Cir. 2003) ("The mere possibility that a participant in an ERISA plan might be able to return to some type of gainful employment, in light of overwhelming evidence to the contrary, is an insufficient basis upon which to support a plan administrator's decision to deny that participant's claim for LTD benefits.").

At the hearing, Continental also attempted to rely on Dr. Tibbs' report to support its contention that Mr. Swiger's herniated discs constituted a preexisting condition.  A review of Dr. Tibbs' report, however, reveals that it provides no such support.  In reviewing Mr. Swiger's medical history, Dr. Tibbs noted, "CAT scan dated 8/30 showed degenerative changes and was read as L5-S1 right herniation by the radiologist." [Adm. R. 249].  This report simply refers to

14

Dr. Ross' diagnosis of Mr. Swiger's herniated discs. It cannot be reasonably inferred from Dr. Tibbs' single use of the word 'degenerative' that Mr. Swiger's degenerative lumbar disc disease was actually herniated discs.

In contrast, there is evidence in the record that the two are distinct conditions and that medical treatment or advice was rendered, prescribed, or recommended only for degenerative lumbar disc disease and not herniated discs. In an April 18, 2002, letter to Continental, Dr. deGuzman explained that Mr. Swiger suffered from both herniated discs at L3/L4 and L5/S1 and degenerative lumbar arthritis. *Id.* at 73. The former condition was the result of Mr. Swiger's fall from the truck in June of 2001, while the doctor had treated Mr. Swiger for the latter condition since March of 1999. *Id.* Continental offers no explanation for why it discounted this letter nor any indication that it considered it at all. *See Glenn*, 461 F.3d at 672 ("[T]he failure to consider evidence that is offered after an initial denial of benefits renders a final denial of benefits arbitrary and capricious.").

In addition, as of January 23, 2002, Continental's own claim analysis ruled out the preexisting condition exclusion in spite of Mr. Swiger's treatment for degenerative lumbar disc disease. The claims analysis record stated, "[i]nformation available confirms EE treated for Degenerative Lumbar Disc Disease during pre-x window. However, no mention of Post Polio Syndrome or HNP[3] noted during that time period. Therefore, pre-x ruled out." [Adm. R. 47]. In its brief, Continental offers no explanation for this notation or for what occurred subsequently that would explain why it changed its position on the preexisting condition exclusion. At the

---

[3] "HNP" presumably refers to herniated nucleus pulposos, which is Dr. Witt's diagnosis of Mr. Swiger based on his November 30, 2001, examination. [Adm. R. 203].

15

hearing, Continental indicated that Dr. Truchelot's report explains the change, which is consistent with the administrative record. A March 21, 2002, notation states, "Rec report back from med review showing HNP is pre-existing," *id.* at 38, which likely refers to Dr. Truchelot's March 16, 2002, report. As discussed above, however, Dr. Truchelut merely stated that Dr. deGuzman was treating Mr. Swiger for degenerative lumbar disc disease, not herniated discs. Mr. Swiger admits receiving treatment for degenerative lumbar disc disease, and the issue–which Dr. Truchelot's report does not address–is whether the herniated discs are a preexisting condition.

Continental does not argue in its brief that degenerative lumbar disc disease contributed to or resulted in Mr. Swiger's herniated discs. Continental confirmed at the hearing they were not arguing that degenerative lumbar disc disease led to the herniated discs; rather, their position was that Mr. Swiger suffered from herniated discs all along, not degenerative lumbar disc disease. As such, the Policy provisions excluding benefits when a preexisting condition merely contributes to or results in a loss do not apply in this case.

Continental's reliance on *Greenwald v. Life Ins. Co.*, No. 04-40071, 2006 WL 901651 (E.D. Mich. Mar. 29, 2006) (unpublished), is therefore misplaced as well. In *Greenwald*, the plaintiff had been diagnosed with Dysthmia (a form of depression) during the relevant preexisting condition period. *Id.* at *10. The plaintiff admitted treatment for Dysthmia but argued that Major Depression led to his inability to work and supported his claim for benefits. *Id.* at *9. The defendant argued that the Dysthmia contributed to the Major Depression, and thus the preexisting condition exclusion applied. *Id.* A report by a doctor retained by the defendant to review the plaintiff's medical file stated that the Dysthmia escalated into the Major Depression

16

and rejected the view that the two were independent. *Id.* at \*10, \*12. Therefore, the court found that evidence of record supported application of the preexisting condition exclusion and held that the defendant's denial of the plaintiff's benefits claim was not arbitrary and capricious. *Id.* at \*12. In contrast, here Continental has disclaimed any argument that Mr. Swiger's degenerative lumbar disc disease contributed to or resulted in his herniated discs.

Accordingly, there is no reasoned explanation based on evidence in the administrative record for finding that Mr. Swiger's herniated discs constituted a preexisting condition. While the Court recognizes that the arbitrary and capricious standard "is the least demanding form of judicial review of administrative action," *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000), even under this standard Continental's decision must be based on some evidence in the record. *See Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) ("[W]hen it is possible to offer a reasoned explanation, **based on the evidence**, for a particular outcome, that outcome is not arbitrary or capricious.") (emphasis added) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)). Because there is a lack of evidence that Mr. Swiger's herniated discs constitute a preexisting condition, Continental's denial of benefits on that basis is arbitrary and capricious.[4]

---

[4] In its brief and at the hearing, Continental places substantial weight on the fact that Mr. Swiger's claim of falling off of a truck in West Virginia in June of 2001 is uncorroborated. [R. 24, pp. 5–6; Adm. R. 34]. Such an incident could perhaps be relevant to whether Mr. Swiger's herniated discs resulted from the fall or his degenerative lumbar disc disease. However, as discussed, Continental did not argue that Mr. Swiger's degenerative lumbar disc disease contributed to or resulted in the herniated discs. Moreover, while Mr. Swiger did not mention his fall until after the December 6, 2001, letter from Continental indicating that it was investigating the preexisting condition exclusion, he had reported increased pain beginning around June 2001 to his doctors prior to the December 6 letter. [Adm. R. 203, 219, 249].

*C. Remedy*

Having determined that Continental's decision to deny Mr. Swiger long-term disability benefits on the basis of the preexisting condition exclusion was arbitrary and capricious, the Court must determine the appropriate remedy. The Court either may award benefits to Mr. Swiger or remand the matter to the plan administrator for further proceedings. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006). In *Elliott*, the Sixth Circuit, adopting the holding in *Buffonge v. Prudential Ins. Co. of America*, 426 F.3d 20, 31 (1st Cir. 2005), held that where the problem is with the integrity of the plan administrator's decision-making process rather than with a claimant being denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator. *Elliott*, 473 F.3d at 622. Because it could not find that the plaintiff was clearly entitled to disability benefits on the evidence in the record, the court remanded the case to the district court with instructions to remand to the plan administrator. *Id.*

In this case, remand to the plan administrator is appropriate because the record is insufficient to establish that Mr. Swiger is clearly entitled to the long-term disability benefits he seeks. For Mr. Swiger to be eligible for these benefits during the initial twenty-four months of his disability, he must be continuously unable to perform the material and substantial duties of his regular occupation. [Adm. R. 10]. After the initial twenty-four month period, Mr. Swiger must be continuously unable to engage in any occupation for which he is qualified or can become qualified. *Id.* While there is some evidence in the record regarding Mr. Swiger's ability to

engage in his occupation,[5] the Court did not find sufficient information to hold that Mr. Swiger was (or was not) continuously unable to perform his regular occupation or any other occupation after the initial twenty-four month period, as required under the Policy. Thus, on the administrative record currently before the Court, Mr. Swiger is not clearly entitled to long-term disability benefits and remand is the appropriate remedy.[6]

Because of its finding on the preexisting condition exclusion, Continental did not make a determination regarding these requirements. The absence of an administrative decision by Continental for the Court to review further supports remanding these issues to Continental. *See Elliott*, 473 F.3d at 622–23 (stating that remanding the case to the administrator "will allow for a proper determination of whether, in the first instance, Elliott is entitled to long-term disability benefits. We are not medical specialists and that judgment is not ours to make."); *Univ. Hosp. v. Emerson Elec. Co.*, 202 F.3d 839, 852 n.13 (6th Cir. 2000) (finding that plan administrator's decision regarding the preexisting condition exclusion was arbitrary and capricious and remanding matter back to the plan administrator because it had made no findings on whether certain expenses satisfied other plan requirements once it determined that the preexisting condition exclusion applied); *Logan v. Unicare Life & Health Ins., Inc.*, No. 05-72928, 2007 WL

---

[5] In response to Continental's request on the subject, Dr. Truchelot stated that Mr. Swiger's medical records "support the claimant's inability to perform his occupational duties . . . ." *Id.* at 85.

[6] *Williams v. Int'l Paper Co.*, 227 F.3d 706 (6th Cir. 2000), the case cited by Mr. Swiger in support of his request for an award of benefits is distinguishable. There, the court noted that the plan administrator had the opportunity to consider all relevant evidence and in fact had considered it. *Id.* at 715 n.5. *Williams* explicitly distinguished *University Hospital*, 202 F.3d 839 (6th Cir. 2000), on this basis. *Id.* Here, however, there is insufficient evidence in the record regarding Mr. Swiger's ability to engage in his occupation or any occupation because Continental apparently did not investigate these issues once it determined the preexisting condition exclusion applied. [R. 24, p. 10]. As such, this case is more analogous to *University Hospital* than *Williams* and remand is the proper remedy.

1760759, at *5 (E.D. Mich. June 13, 2007) (unpublished) ("In UniCare's rejection of Plaintiff's long-term disability claim [on the basis of the preexisting condition exclusion], it stated that it had not conducted an investigation to determine if Plaintiff was totally disabled. Thus, there is no decision on this point for the court to review, and, although Plaintiff has provided some medical information, the issue has not been formally briefed or argued.").

IV. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Defendant's administrative decision denying Plaintiff's application for long-term disability benefits on the basis of the preexisting condition exclusion is **REVERSED**.

(2) This matter is **REMANDED** to Defendant for findings consistent with this Opinion.

(3) This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

(4) After a new determination regarding Plaintiff's application for long-term disability benefits has been made by Defendant on remand, Plaintiff may challenge that determination upon motion to the Court if he so chooses. *Bowers v. Sheet Metal Workers Nat'l Pension Fund*, 365 F.3d 535, 537 (6th Cir. 2004).

This the 2nd day of May, 2008.

Signed By:

*Amul R. Thapar* 

United States District Judge